Case No. 17-1344

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**303 CREATIVE LLC** and **LORIE SMITH**,

*Plaintiffs-Appellants,*

v.

**AUBREY ELENIS**, et al.,

*Defendants-Appellees,*

---

On appeal from the United States District Court
for the District of Colorado
The Honorable Chief Judge Marcia S. Krieger
Case No. 1:16-cv-02372-MSK-CBS

---

## APPELLANTS' REPLY BRIEF

---

Kristen K. Waggoner
Jonathan A. Scruggs
Katherine L. Anderson
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org

David A. Cortman
Rory T. Gray
Alliance Defending Freedom
1000 Hurricane Shoals Rd., NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Michael L. Francisco
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
michael.francisco@mrd.law

*Attorneys for 303 Creative LLC and Lorie Smith*
**_Oral Argument is Requested_**

February 15, 2018

# Table of Contents

Table Of Authorities ............................................................................ iii

Introduction ......................................................................................... 1

Argument ............................................................................................. 2

I.    This Court has appellate jurisdiction to review this appeal. .......... 2

II.   This Court should not stay this appeal because a stay would
      irreparably harm Lorie. ................................................................. 7

III.  The federal courts have standing to review Lorie's speech
      mandate challenge. ........................................................................ 8

IV.   Lorie deserves a preliminary injunction and summary
      judgment against the speech mandate and publication ban. ....... 11

      A.    The speech mandate compels speech. ................................ 12

      B.    The speech mandate compels speech based on content
            and viewpoint. ................................................................... 17

      C.    Colorado continues to advocate for the unfettered power
            to compel speech. .............................................................. 17

      D.    The publication ban silences speech based on content
            and viewpoint. ................................................................... 19

      E.    The speech mandate and publication ban impose
            unconstitutional conditions. .............................................. 22

      F.    The speech mandate and publication ban violate Lorie's
            free exercise and equal protection rights. .......................... 22

      G.    The speech mandate and publication ban fail strict
            scrutiny. .............................................................................. 25

H.     The publication ban is vague, overbroad, and allows unbridled discretion. ...........................................26

I.      Lorie satisfies the remaining factors for a preliminary and permanent injunction. ...................................27

Conclusion ........................................................................28

Certificate of Compliance with Rule 32(A) ...........................30

Certificate of Digital Submission.........................................31

Certificate of Service .........................................................32

# Table Of Authorities

## *Cases*

*Ampersand Publishing, LLC v. NLRB,*
   702 F.3d 51 (D.C. Cir. 2012) ........................................................ 13

*Associates & Aldrich Co. v. Times Mirror Co.,*
   440 F.2d 133 (9th Cir. 1971) ....................................................... 15

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ................................................... 11

*Axson-Flynn v. Johnson,*
   356 F.3d 1277 (10th Cir. 2004) ................................................... 24

*Babbitt v. United Farm Workers National Union,*
   442 U.S. 289 (1979) ...................................................................... 9

*Ben Ezra, Weinstein, & Co. v. America Online, Inc.,*
   206 F.3d 980 (10th Cir. 2000) ....................................................... 8

*Boy Scouts of America v. Dale,*
   530 U.S. 640 (2000) ..................................................................... 14

*Brush & Nib Studio, LC v. City of Phoenix,*
   No. CV 2016-052251 (Ariz. Super. Ct. Sept. 19, 2016) ................. 18

*Citizens United v. Federal Election Commission,*
   558 U.S. 310 (2010) ..................................................................... 24

*City of Lakewood v. Plain Dealer Publishing Co.,*
   486 U.S. 750 (1988) ..................................................................... 14

*Claybrooks v. American Broadcasting Companies, Inc.,*
   898 F. Supp. 2d 986 (M.D. Tenn. 2012) ................................. 13, 15

*Consolidated Edison Co. of N.Y. v. Public Service Commission,*
   447 U.S. 530 (1980) ..................................................................... 20

*Craig v. Masterpiece Cakeshop, Inc.*,
370 P.3d 272 (Colo. App. 2015) ...................................................... 26

*Cressman v. Thompson*,
798 F.3d 938 (10th Cir. 2015) ........................................................ 12

*Crystal Clear Communications, Inc. v. Southwest Bell
Telephone Co.*,
415 F.3d 1171 (10th Cir. 2005) ......................................................... 5

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) .......................................................... 10

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) ....................................................... 11

*E.E.O.C. v. Kerrville Bus Co.*,
925 F.2d 129 (5th Cir. 1991) ............................................................ 6

*Elane Photography, LLC v. Willock*,
309 P.3d 53 (N.M. 2013) ................................................................. 18

*Employment Division, Department of Human Resources
of Oregon v. Smith*,
494 U.S. 872 ................................................................................... 25

*Finley v. National Endowment for the Arts*,
100 F.3d 671 (9th Cir. 1996), *rev'd on other grounds*,
524 U.S. 569 (1998) ........................................................................ 26

*First National Bank of Boston v. Bellotti*,
435 U.S. 765 (1978) ........................................................................ 14

*Flood v. ClearOne Communications, Inc.*,
618 F.3d 1110 (10th Cir. 2010) ......................................................... 5

*Forest Guardians v. Babbitt*,
174 F.3d 1178 (10th Cir. 1999) ......................................................... 4

*Frudden v. Pilling*,
742 F.3d 1199 (9th Cir. 2014) ......................................................... 16

*Giboney v. Empire Storage & Ice Co.,*
 336 U.S. 490 (1949) ..................................................... 20

*Greene v. McElroy,*
 360 U.S. 474 (1959) ..................................................... 22

*Groswirt v. Columbus Dispatch,*
 238 F.3d 421 (6th Cir. 2000) ........................................ 19

*Hurley v. Irish-American Gay, Lesbian and Bisexual*
 *Group of Boston,*
 515 U.S. 557 (1995) ................................. 2, 11, 13, 14, 15

*In re Gifford v. McCarthy,*
 23 N.Y.S.3d 422 (N.Y. App. Div. 2016) ........................ 18

*Jian Zhang v. Baidu.com Inc.,*
 10 F. Supp. 3d 433 (S.D.N.Y. 2014) ............................. 13

*Landis v. North American Co.,*
 299 U.S. 248 (1936) ....................................................... 8

*Langdon v. Google, Inc.,*
 474 F. Supp. 2d 622 (D. Del. 2007) ............................. 15

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
 137 S. Ct. 2290, *cert. granted* (June 26, 2017) (No. 16-111) ...... 7, 16

*McCauley v. University of the Virgin Islands,*
 618 F.3d 232 (3d Cir. 2010) ......................................... 27

*Mink v. Suthers,*
 482 F.3d 1244 (10th Cir. 2007) ..................................... 9

*NAACP v. Button,*
 371 U.S. 415 (1963) ..................................................... 13

*New York Times Co. v. Sullivan,*
 376 U.S. 254 (1964) ..................................................... 15

*Obergefell v. Hodges,*
 135 S. Ct. 2584 (2015) ................................................. 21

*Pacific Gas & Electric Co. v. Public Utilities Commission of California,*
    475 U.S. 1 (1986) ............................................................ 14

*Perry v. Sindermann,*
    408 U.S. 593 (1972) ........................................................ 22

*Petrella v. Brownback,*
    787 F.3d 1242 (10th Cir. 2015) ....................................... 6

*Riley v. National Federation of the Blind of North Carolina,*
    487 U.S. 791 (1988) ................................................. 15, 20

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ......................................................... 16

*State v. Arlene's Flowers, Inc.,*
    389 P.3d 543 (Wash. 2017) ....................................... 18, 26

*Telescope Media Group v. Lindsay,*
    No. 0:16-cv-04094, 2017 WL 4179899
    (D. Minn. Sept. 20, 2017) .............................................. 18

*Tenafly Eruv Association, Inc. v. Borough of Tenafly,*
    309 F.3d 144 (3d Cir. 2002) ........................................... 11

*Treanor v. Washington Post Co.,*
    826 F. Supp. 568 (D.D.C. 1993) ..................................... 19

*United Food & Commercial Workers Union v. Southwest Ohio Regional Transit Authority,*
    163 F.3d 341 (6th Cir. 1998) ......................................... 27

*United States v. Ahidley,*
    486 F.3d 1184 (10th Cir. 2007) ..................................... 23

*United States v. Williams,*
    553 U.S. 285 (2008) ...................................................... 20

*Virginia v. American Booksellers Association, Inc.,*
    484 U.S. 383 (1988) ......................................................... 9

*Ward v. Utah,*
    321 F.3d 1263 (10th Cir. 2003) .................................................. 9, 10

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) ................................................................ 16, 17

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943) ........................................................................ 17

*Wichita Eagle & Beacon Publishing Co. v. N.L.R.B.,*
    480 F.2d 52 (10th Cir. 1973) ......................................................... 19

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ....................................................................... 16

## Statutes

28 U.S.C. § 1292(a)(1) .................................................................... 4

## Other Authorities

Eugene Volokh, *The "Speech Integral to Criminal Conduct"*
    *Exception,*
    101 Cornell L. Rev. 981, 1011 (2016) ............................................. 20

# Introduction

Appellant Lorie Smith seeks the freedom to decide what to say and what not to say.[1] Colorado seeks the limitless authority to deny that freedom. Through an unusual application of the Colorado Anti-Discrimination Act ("CADA"), Colorado compels Lorie to create and publish content that violates her religious beliefs, forbids her to create content her beliefs demand, and ignores her willingness to serve all people regardless of who they are. Nothing justifies this attack on speaker autonomy.

Yet Colorado tries to shield its attack, asking this Court to delay this appeal because of a pending Supreme Court case, or dismiss it entirely because Lorie has not yet violated the law. But Lorie cannot exercise her constitutional rights now for fear of unjust punishment. She chills her speech, suffering irreparable harm every day she waits for a ruling. To deny or delay her appeal would only validate this harm, defeat the purpose of the interlocutory appeal statute, and allow Colorado to insulate its unconstitutional acts from review.

On the merits, Colorado admits that Lorie is engaged in speech, and concedes that under CADA she must compose unwanted graphics and words like "You're Invited. Mike and Stewart ... We invite you to celebrate our marriage." It's defense? That it can compel any

_____

[1] Unless context dictates otherwise, references to "Lorie" refer to both Plaintiff-Appellants.

commissioned speech so long as it uses a law that facially regulates conduct. But that is no defense. It's an admission of guilt.

Laws do not transform speech into conduct by labels. And courts have long recognized that facially neutral laws can unconstitutionally compel speech as applied. *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). Otherwise, Colorado could compel anyone to create undesired content, from freelance writers to musicians to filmmakers. First Amendment protections are not so easily circumvented. They should not be circumvented here.

## Argument

### I.    This Court has appellate jurisdiction to review this appeal.

This Court can review Lorie's appeal because she sought a preliminary injunction, which the district court expressly and practically denied. To avoid this conclusion, Colorado ignores what happened below and the precedent Lorie cited in her response to Colorado's motion to dismiss.

As to the proceedings below, Lorie continually pressed the lower court for a preliminary injunction. While Colorado says Lorie abandoned that request, Appellees' Br. 20-22, ECF No. 01019939442, the record shows otherwise. Lorie filed a preliminary injunction motion, justified it with briefing, and pressed it at the January 2017 hearing. Appellants' Appendix ("Aplt. App.") 176-90, 364, ECF Nos. 01019917839-41. There the district court, not Lorie, urged her to seek summary judgment in

addition to the preliminary injunction motion. Aplt. App. 186 (11:8-9, 12-13) (Court: "Well, I'm not inclined to make two rulings … When are you going to be prepared to address your issues?").

Left with little choice, Lorie sought summary judgment on an expedited basis with her preliminary injunction motion, Aplt. App. 186 (11:20-22), all the time urging the court to rule quickly. *Id.* at (11:3-7) (Counsel: "… as long as you decided promptly the issues. There's irreparable harm going on right now with her chilling of her speech, so we would urge the Court to make a decision quickly.").

The district court then held the preliminary injunction motion and ruled on it simultaneously with the summary judgment motion—a procedure it spelled out to everyone. Aplt. App. 187-88 (12:23-13:2) (Court: "Court…will rule on the motion for preliminary injunction, motion for summary judgment, and motion to dismiss simultaneously.").

Discounting these facts, Colorado says the preliminary injunction request disappeared because Lorie did not mention it again in her summary judgment briefing. Appellees' Br. 21. Of course she did not. The preliminary injunction was already briefed. Aplt. App. 364. At summary judgment, Lorie only needed to justify permanent relief. In contrast, Colorado referenced preliminary and permanent injunctions in its summary judgment response, demonstrating that it, like Lorie, knew both motions remained live. Defs.' Resp. to Pls.' Mot. for Summ. J. and

Mem. in Supp. ("Defs.' MSJ Resp.") 25, 28, ECF No. 50 (arguing that a "preliminary injunction should not be granted").

Moving from proceedings to precedent, Lorie's response to Colorado's motion to dismiss cited numerous cases justifying appellate jurisdiction in this procedural posture. Pls.-Appellants' Resp. to Defs.-Appellees' Mot. to Dismiss for Lack of Appellate Jurisdiction ("Appellate MTD Resp."), ECF. No. 01019889796. Colorado never responds to those cases. To avoid repetition, only a few points deserve emphasis.

One, Lorie's appeal is proper under 28 U.S.C. § 1292(a)(1) because the district court's order expressly and effectively denied preliminary injunctive relief, causing serious and irreparable consequences. Aplt. App. 375 ("[T]he Court denies the Motion[] for Preliminary Injunction…."); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1184-85 (10th Cir. 1999) (finding jurisdiction under both strands of analysis: express denial and effective denial); Appellate MTD Resp. 7-14 (expanding on this analysis).

Although Colorado thinks the district court denied the preliminary injunction in form only, without legal or factual findings, Appellees' Br. 23-26, that is inaccurate and irrelevant. The court made legal and factual findings for all three motions, including the preliminary injunction motion. Aplt. App. 364-76 (listing "Undisputed Facts," and providing legal "Analysis" and "Conclusions"). Moreover, a form denial or stay of a preliminary injunction motion effectively denies that motion, creating an

appealable order. *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1175 (10th Cir. 2005) (recognizing that a "stay order [that] operates to put a party 'effectively out of court'" is appealable (internal citation omitted)). No doubt, parties typically cannot appeal stay orders, as Colorado notes, but that is not true for stays of preliminary injunctions, as noted by the very case Colorado cites in contradiction. Appellees' Br. 24-25 (citing *Crystal Clear Commc'ns*, 415 F.3d 1171).

Two, interlocutory jurisdiction does not evaporate when lower courts decide preliminary injunction requests with other motions. *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1116 (10th Cir. 2010) (finding jurisdiction over a combined preliminary injunction and summary judgment ruling); Appellate MTD Resp. 14-18. This makes sense. Otherwise, lower courts could insulate every preliminary injunction ruling from review by consolidating it with another motion. That is not the rule in this Court or anywhere.

The cases Colorado cites are no exception. Appellees' Br. 22. While these cases recognize that interlocutory appeals merge with *appealable* final orders, when "the district court has yet to enter any permanent injunction into which the preliminary injunction might have merged," the interlocutory appeal remains alive. *Flood*, 618 F.3d at 1116. Here, the court did not issue a final, independently appealable order on summary judgment. So, Lorie is left in limbo, unable to appeal and unable to stop the violation of her rights.

Nor does this principle open the floodgates to countless appeals as Colorado suggests. Appellees' Br. 20, 29 n.3. Lorie's argument applies only when someone seeks and presses for a preliminary injunction which the district court expressly or effectively denies. None of the cases Colorado cites to support its floodgates argument involve anyone seeking a preliminary injunction or demonstrating serious harm. *See e.g., E.E.O.C. v. Kerrville Bus Co.*, 925 F.2d 129, 131 (5th Cir. 1991) ("Kerrville did not seek a preliminary injunction of any sort.").

Three, this Court can review the motion to dismiss and summary judgment rulings because they are "inextricably intertwined" with the preliminary injunction ruling and review of one is necessary to ensure meaningful review of all.[2] Appellate MTD Resp. 22-26. Colorado denies this for the motion to dismiss in a mere sentence, but never explains why, Appellees' Br. 61, perhaps because this Court has already exercised pendent jurisdiction in this scenario. *See Petrella v. Brownback*, 787 F.3d 1242, 1255 (10th Cir. 2015) (hearing appeal of partial motion to dismiss with preliminary injunction appeal).

As for the summary judgment ruling, Colorado emphasizes how courts rarely exercise pendent jurisdiction over summary judgment denials. Appellees' Br. 59. But this appeal is atypical: the parties

---

[2] Although Colorado says Lorie omitted the second basis for pendent appellate jurisdiction, Appellees' Br. 61 n.14, she briefed both bases in her response. Appellate MTD Resp. 22-26.

stipulated to the facts below, and the preliminary injunction and summary judgment records completely overlap. In this scenario, the legal issues overlap and can be decided together. Colorado never wrestles with this distinction or explains why this Court should needlessly delay a summary judgment ruling.

## II. This Court should not stay this appeal because a stay would irreparably harm Lorie.

This Court not only has jurisdiction to hear this appeal, it should hear this appeal now to avoid inflicting irreparable harm.

Colorado, though, asks this Court to wait for *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 137 S. Ct. 2290, cert. granted (June 26, 2017) (No. 16-111), pointing out that Lorie's own briefs compare her to the cake artist in that case. Appellees' Br. 30. But Lorie made that comparison to prove standing. Just because Colorado treats that cake artist and Lorie alike in determining if CADA applies does not mean their merits arguments are identical.

To be sure, Lorie's case raises some similar arguments as *Masterpiece. Id.* But some similar arguments do not justify a stay when cases involve different parties, different facts, different expressive mediums, and some different claims and arguments. Colorado never denies these differences. And these differences mean no one can know how or if a *Masterpiece* ruling will affect Lorie's case. Colorado's stay argument turns on sheer guesswork.

Even more problematic, Colorado adopts the wrong standard for evaluating stays. Courts do not simply ask if a stay is within "bounds of moderation." *Id.* at 32. That platitude—plucked out of context from *Landis v. North American Co.*, 299 U.S. 248, 256 (1936)—is true but provides little guidance. Movants must still show "a clear case of hardship or inequity in being required to go forward." *Id.* at 255. And though these factors are "counsels of moderation rather than limitations upon power," *id.*, this Court applies them stringently. *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (noting that movant "must" meet these factors).

And Colorado cannot meet this standard: it identifies no harm it would suffer from proceeding to the merits. At most, Colorado invokes "the right of all Colorado citizens to be free from discrimination." Appellees' Br. 32. But Colorado never explains why reaching the merits now rather than later threatens that right. In contrast, a delay would necessarily harm Lorie irreparably, forcing her to keep forgoing her First Amendment freedoms. Appellants' Br. 26-29, ECF No. 01019917829. Colorado cites no case granting a stay in this context. This Court should not be the first.

## III. The federal courts have standing to review Lorie's speech mandate challenge.

Moving from stay to standing, Lorie can challenge CADA's speech mandate because it forces her to create same-sex wedding websites and

graphics if she creates any wedding websites and graphics. That, in turn, deters Lorie from creating wedding websites and graphics at all. Colorado concedes this. Aplt. App. 270 (¶¶ 95-96) (stipulating that Lorie's speech is chilled). That chill injury confers standing.

In response, Colorado says this Court should not assume Colorado will enforce its law against Lorie. Appellees' Br. 63. But that mistakes the law. In the First Amendment context, courts do assume officials will enforce their laws against a speaker if the law arguably covers the speaker and officials do not disavow. *See, e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (finding credible threat because "provision on its face proscribes" desired activity); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (finding standing because the "State has not suggested that the newly enacted law will not be enforced").

The cases Colorado cites do not prove otherwise. Appellees' Br. 63-64 (quoting *Mink v. Suthers*, 482 F.3d 1244, 1255 (10th Cir. 2007) and *Ward v. Utah*, 321 F.3d 1263, 1268 (10th Cir. 2003)). Their language merely allows the rare exception to the general rule—a rogue prosecutor, a moribund statute, or a change in administration. None of these apply here.

More importantly, Lorie does not rely on just CADA's language to prove a credible threat. Colorado has already enforced its law against a similarly situated person in *Masterpiece*, has repeatedly declared that

CADA compels what Lorie fears, and has defended its authority to enforce CADA against Lorie. Appellees' Br. 32, 48-50. This Court has found standing on much less. *See e.g.*, *Ward*, 321 F.3d at 1267 (finding standing to stop "future prosecution" where the state attempted to disavow but had previously prosecuted similar speech).

Unable to deny its intent to enforce CADA against Lorie, Colorado recycles the district court's argument that certain events (i.e., Lorie receiving a request to create a same-sex wedding website) must occur before CADA can be credibly enforced. Appellees' Br. 62-64. But Lorie already refuted that argument because: (1) of those events, Lorie controls whether most will occur; (2) Colorado can begin enforcement proceedings without Lorie receiving a request; (3) precedent does not require a third party request for standing; (4) Lorie already received a request;[3] and (5) this Court must address the speech mandate's validity to rule on Lorie's publication ban challenge. Appellants' Br. 20-24. Colorado never responds to any of these points. The silence is telling.

---

[3] Colorado complains that it did not stipulate to this request and that Lorie cited social security statistics for the first time on appeal. Appellees' Br. 56 n.13. But Lorie can submit evidence at summary judgment, and Colorado can object specifically, move to strike, or prove a factual dispute. Fed. R. Civ. P. 56. It did none of these, offering a general objection at most. Defs.' MSJ Resp. 2. As to the statistics, Lorie used them at her first opportunity because the district court's order was the first to question the requestors' gender. Aplt. App. 373. This Court can also take judicial notice of these statistics. *Denius v. Dunlap*, 330 F.3d 919, 926–27 (7th Cir. 2003) (taking notice of information on agency's website).

## IV. Lorie deserves a preliminary injunction and summary judgment against the speech mandate and publication ban.

Turning to the merits, Lorie deserves a preliminary injunction and summary judgment because compelling and silencing her speech violates numerous constitutional rights. To prove this, Lorie need not meet an unusual standard. She seeks a prohibitory injunction that maintains the status quo: the injunction in no way "compel[s] [Colorado] to do something it was not already doing." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). It seeks to prohibit Colorado from doing something it has not yet done—enforce the law against Lorie. Colorado incorrectly assesses status quo from the perspective of its law generally, not the parties in dispute. Appellees' Br. 34 n.7. Regardless, Lorie satisfies the standard for a disfavored injunction too because of the First Amendment freedoms at stake. *Awad v. Ziriax*, 670 F.3d 1111, 1126, 1131-32 (10th Cir. 2012).

Lorie's appeal also triggers this Court's duty to independently examine the record. Contrary to Colorado's thinking, Appellees' Br. 35 n.8, this "is a rule of federal constitutional law," *Hurley*, 515 U.S. at 567 (internal quotation omitted), that applies to all stages, not just final judgments. *See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 156 (3d Cir. 2002) (applying rule to preliminary injunction). Under this standard, Lorie establishes violation of her constitutional rights.

## A. The speech mandate compels speech.

CADA compels speech by forcing Lorie to create undesired pure speech (websites and graphics). Colorado concedes this. Aplt. App. 263, 268 (¶¶ 46-47, 50, 81-82) (conceding these are "expressive in nature," contain "modes of expression," and "communicate a particular message"). It also accepts that Lorie objects to creating expression celebrating same-sex marriage. Yet it asserts the right to force Lorie to do so anyway—compelling her, for example, to write "You're Invited. Mike and Stewart … We invite you to celebrate our marriage," in violation of her beliefs. Appellees' Br. 46-47.[4]

These concessions prove Lorie's compelled-speech claim under the three-part test from *Cressman v. Thompson*: "(1) speech; (2) to which [plaintiff] objects; that is (3) compelled by some governmental action," 798 F.3d 938, 951 (10th Cir. 2015). Yet Colorado ignores this precedent. Appellees' Br. 37-41.

Instead, Colorado makes the bold claim that laws regulating "commercial conduct" can never compel speech. Appellees' Br. 37-41. Not so. Courts have repeatedly stopped laws that *facially* regulate

---

[4] Colorado omits the latter part of this quote to claim that Lorie discriminates by objecting to writing two male names. Appellee's Br. 46-47. But Lorie does not object to writing "You're Invited. Mike and Stewart to celebrate our new home." She objects to celebrating any marriage except one-man/one-woman marriage. This underscores that Lorie objects to conveying certain messages, not certain people.

commercial conduct from compelling speech or infringing editorial judgment *as applied*:

- The National Labor Relation Act: *Ampersand Publishing, LLC v. NLRB*, 702 F.3d 51 (D.C. Cir. 2012) (vacating application of NLRA because it infringed newspaper's editorial judgment);

- The 1866 Civil Rights Act: *Claybrooks v. American Broadcasting Cos., Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012) (enjoining application of 42 U.S.C. § 1981 that infringed television studio's editorial judgment);

- Public Accommodation Laws: *Hurley*, 515 U.S. at 572 (concluding that Massachusetts public accommodations law was unconstitutionally applied to selection of parade participants); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) (concluding that New York public accommodations law could not be applied to force web company to publish particular search results).

As these cases show, Colorado cannot transform what it concedes to be speech—Lorie's websites and graphics—into conduct by merely applying a law. No matter what CADA facially regulates or what label Colorado uses ("discrimination," "refusal to offer services," "business operations"), Colorado still tries to compel Lorie to create *websites with text and graphics*. That is a compulsion *of speech*. To say otherwise is a mere labeling game. And "a State cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963).[5]

---

[5] This does not contradict the cases Colorado and the ACLU cite allowing health codes and labor laws to impose incidental burdens on speech.

This logic also explains why Colorado cannot limit *Hurley* to non-profits. Appellees' Br. 38. The "peculiar" application in *Hurley* was not applying a public accommodation law to a non-profit—that happens frequently—but to "declar[e] … speech itself to be the public accommodation." 515 U.S. at 573. Businesses can engage in "speech itself" just as much as non-profits. *Id.* at 574 (recognizing this as to "professional publishers"). Contrary to Colorado's theory, First Amendment protection does not turn on speakers' profit motives or corporate status. *See Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 5-6 (1986) (protecting for-profit electric company); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988) ("[T]he degree of First Amendment protection is not diminished merely because the [expression] is sold rather than given away."); *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 786 n.23 (1978) ("It is too late to suggest 'that the dependence of a communication on the expenditure of money itself operates to introduce a nonspeech element or to reduce the exacting scrutiny required by the First Amendment.'" (internal citation omitted)).

---

Appellees' Br. 36-37, 51-52; Br. of ACLU and ACLU of Colo. as Amici Curiae in Supp. of Defs.-Appellees and Affirmance ("ACLU Br.") 10, ECF No. 01019942752. None of those cases involved compelled speech. Laws compelling expression (speech or association) alter speech's content and "directly and immediately" affect speech; they do not create incidental burdens. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000).

While Colorado tries to distinguish these cases as not involving businesses "open for public participation," it never explains what that means or why that matters. Appellees' Br. 39. Regardless, businesses do not lose control over their speech when they receive requests from the public. Newspapers, publishers, professional fundraisers, television studios, and internet companies all receive applications from the public—to publish an advertisement or audition for a part or fundraise for a cause—but that does not mean they can be compelled to speak unwanted messages. *See, e.g., Hurley*, 515 U.S. at 574 (extending compelled speech doctrine to "professional publishers"); *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 801 (1988) (protecting for-profit fundraisers); *N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964) (protecting the editorial judgment of newspaper to run particular advertisement); *Claybrooks*, 898 F. Supp. 2d at 989-90 (protecting studio's right to select parts in television show); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629 (D. Del. 2007) (protecting Google's right to reject advertisement); *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971) (concluding that newspaper could not be forced to run paid advertisement because that would infringe paper's "subjective editorial discretion"). The fact that Colorado claims the power to compel such speech shows how far it departs from settled First Amendment law. Appellees' Br. 39-40 (admitting that newspapers are "open for public participation" for their "advertisements"); Br. for Resp't Colo. Civil Rights Comm'n at 38 n.7,

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, No. 16-111, 2017 WL 4838416 (Oct. 23, 2017) (interpreting CADA to compel this).

These media cases also illustrate that perceptions of endorsement do not matter to compelled speech analysis. *Contra* Appellees' Br. 38 (claiming CADA never compels Lorie to "endorse a third party's speech"). The doctrine is compelled *speech*, not compelled endorsement. Indeed, no one would think drivers endorse the message on a license plate; but the government cannot compel that regardless. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *see also Frudden v. Pilling*, 742 F.3d 1199, 1204 (9th Cir. 2014) (interpreting *Wooley* this way). Moreover, CADA does compel endorsement. It forces Lorie to imagine from nothing, create from scratch, and disseminate to the world an objectionable message on a website with her name on it. Aplt. App. 263-65, 268 (¶¶ 45-59, 83). Such endorsement is hard to miss.

Lastly, Colorado cites *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47 (2006), to say equal access laws never compel speech. Appellees' Br. 40-41. But that understanding is inaccurate and would bury the compelled-speech doctrine altogether.

In reality, *Rumsfeld* upheld a law forcing law schools to give military recruiters the same access to rooms that others received. 547 U.S. at 58. Unlike Lorie's websites though, these empty rooms were not "inherently expressive." *Id.* at 64 (distinguishing empty rooms from parade in *Hurley* on this basis); *see also Wash. State Grange v. Wash.*

*State Repub. Party*, 552 U.S. 442, 457 n.10 (2008) (distinguishing the facilitation of someone else's speech in *Rumsfeld* from forcing someone to "reproduce another's speech" or from "co-opt[ing] the parties' own conduits for speech"). *Rumsfeld* would be like this case if the government applied its equal access law to require law schools to teach a class promoting the military because they had previously taught a class criticizing the military. That would unconstitutionally compel speech— just like CADA does here.

## B. The speech mandate compels speech based on content and viewpoint.

Adding to the compelled speech problem, Colorado compels speech in a content- and viewpoint-based way. *See* Appellants' Br. 38-39. But Colorado never responds to this argument, thus, conceding it.

## C. Colorado continues to advocate for the unfettered power to compel speech.

Perhaps most shockingly, Colorado never responds to Lorie's argument that it advances a dangerous and limitless principle. Colorado instead doubles down, asserting the power to compel what it concedes to be speech, so long as the speaker receives a commission. Aplt. App. 263, 268 (¶¶ 46-47, 81); Appellee's Br. 38-41.

This should be particularly concerning because it promises "disappointing and disastrous" consequences. *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). For example, Lorie's opening brief provided eight examples of what Colorado's theory would require, from

forcing an African-American sculptor to create crosses for an Aryan-Nation-Church rally to forcing a lesbian web designer to create an Orthodox Jewish website criticizing same-sex marriage. Appellants' Br. 40-41. Colorado's response? Nothing. This non-response concedes that Colorado's theory would compel everything Lorie fears.

Just as ominously, Colorado points to other wedding-related cases to justify compelling Lorie's speech. Appellee's Br. 50. But many of those are distinguishable. One concerned a wedding venue, not speech. *In re Gifford v. McCarthy*, 23 N.Y.S.3d 422 (N.Y. App. Div. 2016). Another conceded that compelling words would be different. *State v. Arlene's Flowers, Inc.*, 389 P.3d 543, 559 n.13 (Wash. 2017) (distinguishing flowers from "words, realistic or abstract images, symbols … all of which are forms of pure expression"). Whatever one thinks about flowers, Lorie creates speech, as Colorado concedes. Aplt. App. 263, 268 (¶¶ 46-47, 81).

The other cases involved compelling writers, painters, filmmakers, and photographers to create speech. *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013); *Telescope Media Grp. v. Lindsey*, No. 0:16-cv-04094, 2017 WL 4179899 (D. Minn. Sept. 20, 2017); *Brush & Nib Studio, LC v. City of Phoenix,* No. CV 2016-052251 (Ariz. Super. Ct. Sept. 19, 2016). But these cases illustrate the problem: Colorado claims the power to compel any commissioned speaker, *no matter their medium*. That

expansive scope is not a reason to accept Colorado's theory. It's a reason to reject it.[6]

Unlike these outlier opinions, most courts follow the traditional path: construe laws to not compel commissioned speech or stop laws from doing so on First Amendment grounds. *See e.g.*, *Wichita Eagle & Beacon Publ'g Co. v. N.L.R.B.*, 480 F.2d 52, 53 (10th Cir. 1973) (refusing to interpret NLRA to impact newspaper's editorial judgment); *Groswirt v. Columbus Dispatch*, 238 F.3d 421, *2 (6th Cir. 2000) (unpublished) (holding that newspaper had First Amendment right not to publish someone else's letter); *Treanor v. Wash. Post Co.*, 826 F. Supp. 568, 569 (D.D.C. 1993) (interpreting ADA to allow newspaper to decline advertisement because alternative "would likely be inconsistent with the First Amendment").

### D. The publication ban silences speech based on content and viewpoint.

Colorado's attempt to restrict speech fails just like its attempt to compel speech. Colorado does not deny that CADA bans Lorie's desired website statement based on content and viewpoint. It rather excuses the ban, saying Lorie can say something else—either a general message about same-sex marriage or a disclaimer. Appellees' Br. 41-42. But "[courts] have consistently rejected the suggestion that a government

---

[6] Notably, both *Brush & Nib* and *Telescope Media* found standing for speech-mandate claims akin to Lorie's here.

may justify a content-based prohibition by showing that speakers have alternative means of expression." *Consol. Edison Co. of N.Y., v. Pub. Serv. Comm'n*, 447 U.S. 530, 541 n.10 (1980). Moreover, Lorie has a particular message she wants to say about the value of one-man/one-woman marriage. Colorado's proposed alternatives say something completely different. They are not interchangeable. *Riley*, 487 U.S. at 790-91 ("The First Amendment mandates that … speakers, not the government, know best both what they want to say and how to say it.").

Colorado then tries to justify restricting Lorie's statement by likening it to a "White Applicants Only" sign. Appellees' Br. 42. But that comparison falters because the latter "is intended to induce or commence illegal activities"—race-based employment discrimination. *United States v. Williams*, 553 U.S. 285, 298 (2008). It is speech that carries out, i.e., is incidental to, *illegal conduct*. In contrast, Lorie's statement does not discuss much less commence anything illegal. It discusses her beliefs about marriage and her right to not promote certain messages.[7]

The comparison also falters because declining to hire a class of people because of their race is nothing like declining to speak a message

---

[7] This point distinguishes cases like *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) that outlaw speech commencing proscribable conduct. There is a stark difference between regulating speech that "cause[s] or threaten[s] *other* illegal conduct" and trying to re-label protected "speech itself" as illegal conduct. Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 1011 (2016) (explaining this point).

celebrating same-sex marriage. One seeks to subjugate an entire class; the other is held "in good faith by reasonable and sincere people here and throughout the world." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015). One turns on the status of who walks through the door; the other turns on the message a speaker is asked to convey.

Lorie exemplifies the difference. She will happily create a website for a lesbian woman celebrating her birthday or a website for a gay father celebrating his daughter's wedding to a man. But she cannot create websites with certain messages, including those celebrating same-sex marriage, *for anyone*—whether a heterosexual father seeking to celebrate his daughter's wedding to a woman or a church seeking to highlight same-sex weddings in its chapel or an advocacy group seeking to promote a rally supporting same-sex marriage. As these examples show, it is not about the status of who walks in the door but the message of what goes on the site.[8] And that—unlike the "No White Applicants" sign—is protected by the First Amendment.

---

[8] The ACLU tries to twist this distinction, claiming Lorie discriminates because she declines websites promoting same-sex marriage "regardless of the requested text or design." ACLU Br. 7. But every website for a same-sex wedding contains text or design celebrating same-sex marriage. Aplt. App. 268 (¶¶ 81-83). The ACLU's objection is like accusing an atheist of discrimination if she cannot create any website promoting churches "regardless of the requested text or design." The ACLU simply tries to convert any speaker's objection to same-sex marriage into per se sexual orientation discrimination.

### E.  The speech mandate and publication ban impose unconstitutional conditions.

To ban Lorie's speech, or compel it, in the way Colorado desires also violates the unconstitutional conditions doctrine. This doctrine recognizes an independent constitutional violation when the government forces an individual to choose between constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (noting that government "may not deny a benefit to a person on a basis that infringes [her] constitutionally protected interests—especially, [her] interest in freedom of speech").

In response, Colorado claims that it has withheld no benefit because operating a business is not a liberty interest. Appellees' Br. 51. But that is not true. *See Greene v. McElroy*, 360 U.S. 474, 492 (1959) (recognizing a liberty interest in "follow[ing] a chosen profession free from unreasonable governmental interference"). By threatening punishment, Colorado forces Lorie to choose between her rights. She can either enjoy the benefit of running a family business free of unreasonable punishment, or free speech.

### F.  The speech mandate and publication ban violate Lorie's free exercise and equal protection rights.

Colorado's application of CADA also burdens Lorie's free exercise and equal protection rights. In both contexts, Colorado targets her beliefs, but not the opposing viewpoint. Appellants' Br. 44-50. Although Lorie set forth both claims separately in Appellants' Brief, *id.*, Colorado responded to both claims jointly, focusing only on three evidentiary

points. Appellees' Br. 43-47. For brevity, Lorie follows that structure here.

First, Colorado contests the consideration of Commissioner Rice's alarming statements because Colorado refused to stipulate to them. Appellees' Br. 44-45; Aplt. App. 254. But that merely rehashes Colorado's objection to this Court considering information from a government record. *See supra* n.3. Further, Commissioner Rice's statements were made during an official adjudication, no member of the board objected to them, and they appear in the *Masterpiece* record. So this Court can take judicial notice of them. *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (allowing notice of "publicly-filed records in our court and certain other courts"). And Colorado has not even attempted to carry its burden to remove the taint of those statements. Appellants' Br. 47-48.

Quite the opposite. Colorado made nearly identical sentiments in its response brief. Appellees' Br. 57 (stating for example that "religion may not be used to perpetuate discrimination against individuals"). So, while Colorado tries to white-wash Commissioner Rice's statements as "general" or "historic," its recent statements reveal the same hostility towards Lorie's beliefs. Appellees' Br. 44

Next, Colorado urges this Court to disregard the Azucar Bakery, Le Bakery Sensual, and Gateaux adjudications, even though Colorado stipulated to their admission. Aplt. App. 260-61, 310-63 (¶¶24-28, Ex. C-L). But those decisions were affirmed by the board and are relevant in

the free exercise and equal protection context because they show that Colorado favors cake artists who support same-sex marriage over those who oppose it. *Id.*

To rebut this, Colorado repeats its already discredited charge that Lorie discriminates based on sexual orientation. Appellees' Br. 45-47. But this time, Colorado accentuates its mistake, for it excuses the bakeries that declined requests based on their "offensive message." *Id.* That message, though, was requested by someone of a protected class and referenced a trait (a Bible verse) distinctive of that class. In other words, the message and protected status overlapped. Yet Colorado exonerated the bakeries while condemning Lorie for the same. The only difference is that Lorie's protected class always loses, unable to decline messages or get their messages made. That unequal treatment and targeting violates both free exercise and equal protection.

Finally, Colorado seeks to avoid its violation of the hybrid-rights doctrine by claiming waiver. Appellees' Br. 47. The hybrid-rights doctrine is a free-exercise argument, not a freestanding waivable claim. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (allowing plaintiffs to raise a new argument on appeal to support a "consistent claim" that a statute violated First Amendment).

On the merits, Colorado asks the Court to reject the hybrid-rights doctrine because other circuits have. Appellees' Br. 47. This Court disagrees. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295-97 (10th Cir.

2004). And this case offers a paradigmatic example of hybrid-rights: compelling speech religiously objected to. *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 881-82 (1990) (citing *Wooley* and *Barnette* as examples of hybrid-rights cases). Colorado gives no substantive reason to reject this doctrine here.

## G. The speech mandate and publication ban fail strict scrutiny.

Because CADA violates Lorie's constitutional rights to free speech, free exercise, and equal protection, strict scrutiny applies. This means Colorado must show that CADA's application to Lorie is narrowly tailored to serve a compelling state interest. Appellants' Br. 51-54.

But in response, Colorado ignores Lorie's arguments that (1) she does not discriminate based on sexual orientation; (2) Colorado must but does not provide a particularized rather than a generalized interest; (3) there are less restrictive alternatives the state could use to stop discrimination without harming Lorie; and (4) CADA is under-inclusive in minimizing dignity harm. Instead, Colorado spends pages reciting the evils of discrimination and the value of public accommodations laws. Lorie contests neither. *Id.* But these arguments do not justify compelling Lorie's speech when she serves everyone and declines requests based on their message.

Colorado also spends pages citing cases condemning race and sex discrimination. But none of those cases involved compelled speech or any

burden on expression. The only cases about sexual orientation discrimination it cites did not consider the medium at issue to be expressive. *Arlene's Flowers*, 389 P.3d at 559 n.13; *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 288 (Colo. App. 2015). Here, though, Colorado concedes there is speech. Aplt. App. 263, 268 (¶¶45, 46, 81). And where the parties do that, no federal court has ever found a compelling interest to compel speech. This Court should not be the first.

## H. The publication ban is vague, overbroad, and allows unbridled discretion.

Unlike the as-applied problems discussed above, the publication ban also suffers from facial vagueness, overbreadth, and unbridled discretion. While Colorado attempts to evade this overbreadth and unbridled discretion problem by claiming waiver, Appellees' Br. 52, that is wrong. Lorie briefed both issues below. Pls.' Mot. for Summ. J. and Mem. in Supp. 45-49, ECF 48. And because Colorado does not respond to the substance of these claims, it concedes them.

As to vagueness, Colorado mistakenly argues that Lorie has not identified any protectable interest protected by the Due Process Clause. Appellees' Br. 52-53. But "free speech is [both] a liberty interest protected by due process" and an "independent source of [the] vagueness doctrine." *Finley v. Nat'l Endowment for the Arts*, 100 F.3d 671, 675 n.4 (9th Cir. 1996), *rev'd on other grounds*, 524 U.S. 569 (1998). By chilling Lorie's speech (and others), CADA deprives that interest.

On the merits, Colorado fares no better. It ignores the cases that found identical language to be overbroad, Appellants' Br. 55, and instead tries to cite dictionary definitions to prove the language's clarity. But dictionary definitions do not clarify subjective terms. Accordingly, courts have found many of the definitions Colorado cites to be vague or overbroad. *See e.g., McCauley v. Univ. of Virgin Islands*, 618 F.3d 232, 248-49 (3d Cir. 2010) (invalidating ban on "offensive" signs as overbroad); *United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 360 (6th Cir. 1998) (finding term "aesthetically pleasing" too vague). As these vague definitions show, the publication ban's terms leave speakers unable to determine what speech is lawful or unlawful, and officials with the power to label any speech critical of a protected class as illegal. That violates the vagueness, overbreadth, and unbridled discretion doctrines.

## I. Lorie satisfies the remaining factors for a preliminary and permanent injunction.

Because Lorie succeeds on her claims, she meets the remaining three injunction factors, irreparable harm, balance of equities, and the public interest. Appellants' Br. 56-57 (citing cases for this point).

Rather than distinguish these cases, Colorado mostly repeats its discrimination and standing arguments Lorie refuted above. Appellees' Br. 55-58. Colorado also recites the district court's flawed harm analysis. *Id.* But this overlooks that Colorado stipulated to Lorie's speech being

chilled, Aplt. App. 270 (¶¶ 95-96), and that the district court's harm analysis contradicts itself. For it found "a chilling effect" on speech, Aplt. App. 374 ("This is sufficient to show a chilling effect" on speech), and irreparable harm to support standing for Lorie's publication ban claims, but then stayed the case anyway based on lack of financial harm—ignoring the constitutional harm it previously identified. Aplt. App. 375. This Court should not credit this contradictory finding. Rather, it should find as all other courts have: the violation and chilling of constitutional freedoms deserves injunctive relief.

## Conclusion

Cutting through its arguments, Colorado seeks one thing: the power to transform Lorie's speech into conduct through a mere say so. Yet a government that can do that to Lorie's speech can do it to anyone else's too. Society is more civil, more pluralistic and more free when speakers on all sides get to control what they say. That is all Lorie asks for here.

Dated: February 15, 2018

Respectfully submitted,

<u>s/ Jonathan A. Scruggs</u>

Kristen K. Waggoner
Jonathan A. Scruggs
Katherine L. Anderson
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
kwaggoner@ADFlegal.org
jscruggs@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman
Rory T. Gray
Alliance Defending Freedom
1000 Hurricane Shoals Rd., NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

Michael L. Francisco
MRD Law
3301 West Clyde Place
Denver, CO 80211
(303) 325-7843
michael.francisco@mrd.law

*Attorneys for 303 Creative LLC and Lorie Smith*

**Certificate of Compliance with Rule 32(A)**
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,489 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a 14-point proportionally spaced Century Schoolbook typeface using Microsoft Word 2013.

Date: February 15, 2018     <u>s/ Jonathan A. Scruggs</u>
                                     Jonathan A. Scruggs

## Certificate of Digital Submission

1.      I hereby certify that all required privacy redactions have been made.

2.      I hereby certify that hard copies of the foregoing Appellants' Reply Brief will be submitted to the Court pursuant to 10th Cir. R. 31.5 and will be exact copies of the version submitted electronically via the court's ECF system.

3.      I hereby certify that this document has been scanned for viruses with the most recent version of a commercial virus scanning program, Traps Advanced Endpoint Protection, Version 4.1.2, and is free of viruses according to that program.

Date: February 15, 2018      s/ Jonathan A. Scruggs
                                    Jonathan A. Scruggs

# Certificate of Service

I hereby certify that on February 15, 2018, a true and accurate copy of this brief was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

Vincent E. Morscher
Deputy Attorney General
Office of the Colorado Attorney General
Civil Litigation & Employment Law Section
vincent.morscher@coag.gov

Skippere Spear
Senior Assistant Attorney General
Office of the Colorado Attorney General
Civil Litigation & Employment Law Section
skip.spear@coag.gov

Jack D. Patten, III
Assistant Attorney General
Civil Litigation and Employment Law Section
jack.patten@coag.gov

*Attorneys for Defendants-Appellees*

Date: February 15, 2018          s/ Jonathan A. Scruggs
                                 Jonathan A. Scruggs